## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

DANIEL A. FIELD,                        )
                                        )
                    Plaintiff           )
                                        )
v.                                      )          Docket No. 05-100-P-S
                                        )
JO ANNE B. BARNHART,                    )
Commissioner of Social Security,        )
                                        )
                    Defendant           )


## REPORT AND RECOMMENDED DECISION[1]


This Supplemental Security Income ("SSI") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who suffers from cervical degenerative disc disease, is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had cervical degenerative disc disease associated with a herniated intervertebral disc at the C-6/C-7 level of the spine as well as with left C-7 nerve-root impingement, causing left upper extremity radiculopathy, was status post arthroscopic repair of a

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 2, 2006, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

small, complex right-knee meniscal tear; had stable lumbar degenerative disc disease, and had a small amount of fluid in the subtalar joint and the sinus tarsi on the right, Finding 2, Record at 24; that at no time relevant to the decision had he suffered from any impairment that fully met the specific criteria of any of those listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings") or had he suffered from any impairment or combination of impairments that could be said to be medically equivalent in severity to any of the Listings, Finding 3, *id*.; that he could lift and carry up to twenty pounds occasionally and up to ten pounds on a repetitive basis, could sit or stand for up to six hours in an eight-hour period, needed to be able to sit and stand at will, needed to avoid walking on uneven surfaces, could only occasionally climb, balance, stoop or crouch, could not crawl or kneel, could not climb ladders, ropes or scaffolds, needed to avoid concentrated exposure to hazards such as heights and moving machinery, had no limitations on his ability to push, pull, operate foot controls or operate hand controls, was subject to no manipulative limitations, could perform work activity within his residual functional capacity ("RFC") on a full-time basis, needed to avoid interaction with the public, and could only occasionally interact with co-workers and supervisors, Finding 6, *id*.; that, considering his age (45 as of his alleged date of onset on September 1, 2002), education (high-school-graduate equivalency diploma), work history and RFC, he was capable of performing other jobs existing in significant numbers in the national economy, such as linen grader, mail clerk, photograph finisher and tube assembler in the electronics industry, Findings 4-5, 9, *id*. at 24-25, and that he therefore had not been under a disability at any time through the date of decision, Finding 10, *id*. at 25.  The Appeals Council declined to review the decision, *id*. at 4-6, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff asserts that the administrative law judge erred in (i) refusing to allow for expert medical testimony to address the issue of Listings equivalence, (ii) finding the plaintiff unlimited in capacity to push, pull or operate hand controls and subject to no manipulative limitations, (iii) stating that the plaintiff's daily activities were consistent with the RFC found by the administrative law judge, and (iv) rejecting the plaintiff's testimony that his medications caused sleepiness on the basis of lack of corroborating evidence. *See generally* Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 7). I find no reversible error.

## I. Discussion

### A. Failure To Call Medical Expert

At the plaintiff's hearing, his counsel stated that he might move, at the end of the proceeding, for a supplemental hearing with a medical expert to provide his client the opportunity to prove that his

condition equaled Listing 1.04.  *See* Record at 33-34.  Anticipating that counsel would do so, at the close of the hearing the administrative law judge denied that request.  *See id*. at 60.  The plaintiff asserts that this was error inasmuch as (i) per Social Security Ruling 96-6p, a medical expert is required when "the symptoms, signs, and laboratory findings reported in the case suggest that a judgment of equivalence may be reasonable[,]" and (ii) in this case a judgment of equivalence was reasonable.  *See* Statement of Errors at 1-2.  I am unpersuaded.

The ruling on which the plaintiff relies provides, in relevant part:

> The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. . . .

> When an administrative law judge or the Appeals Council finds that an individual's impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant.  However, an administrative law judge and the Appeals Council must obtain an updated medical opinion from a medical expert in the following circumstances:

>> ?  When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or

>> ?  When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

Social Security Ruling 96-6p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004) ("SSR 96-6p"), at 131-32.  Read in context, this language provides little (if any) foothold for court intervention.  The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D., *see* Record at 68, discharging the commissioner's basic duty to

obtain medical-expert advice concerning the Listings question.[2]  The administrative law judge was required by SSR 96-6p to obtain additional consultation only if, in his opinion, either of the two above-described circumstances obtained.  In his opinion, neither did.  That seemingly is the end of the matter.  *See, e.g., U'Ren v. Apfel*, No. 99-35604, 2000 WL 1770631, at *2 (9th Cir. Dec. 1, 2000) (noting that SSR 96-6p "specifies only two *discretionary* circumstances when an ALJ should obtain an updated opinion on equivalence from a medical expert"; once administrative law judge concluded that newly submitted evidence was unpersuasive, "he had no obligation to call in another state medical expert to review that evidence") (emphasis in original); *Cordovi v. Barnhart*, No. Civ.A. 04-3742, 2005 WL 3441222, at *3 (E.D. Pa. Dec. 14, 2005) (noting that pursuant to SSR 96-6p, "[a]n ALJ may, but is not required to[,] obtain expert opinions regarding whether an impairment meets or equals a listing.").

In any event, even assuming *arguendo* that the administrative law judge's denial of the plaintiff's request is reviewable under a substantial-evidence or abuse-of-discretion standard, it survives scrutiny.  To meet Listing 1.04 a claimant must demonstrate, in relevant part, that he or she has a disorder of the spine (including a herniated nucleus pulposus or degenerative disc disease) "resulting in compromise of a nerve root" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]"  Listing 1.04(A).

As the plaintiff posits, *see* Statement of Errors at 1, the Record demonstrates that he has cervical degenerative disc disease resulting in impingement of a nerve root, *see* Record at 176.  There

---

[2] The form signed by Dr. Nielson is technically an SSA-831-U3 rather than an SSA-831-U5, *see* Record at 68; however, it appears
*(continued on next page)*

is evidence of pain, *see, e.g., id*. at 169, 178, and sensory loss in the form of some numbness and tingling in his left arm, particularly the fingers of his left hand, *see, e.g., id*. at 169, 224, 231. However, the plaintiff was consistently found to have a full range of motion of his neck, without pain, until April 22, 2003, when he was noted to have a limited range of motion without popping, pain or hesitation. *Compare, e.g., id*. at 168 (Oct. 9, 2002 note that neck had good range of motion and was non-tender), 173 (Jan. 17, 2003 note that neck had full range of motion without pain) *with id*. at 222 (Apr. 22, 2003 note that neck had limited range of motion without popping, pain or hesitation), 224 (June 30, 2003 note that range of motion of cervical spine was limited in distal third by pain). There is only evidence of intermittent, mild weakness. *See, e.g., id*. at 169 (Oct. 9, 2002 note finding "trace of weakness" in left triceps), 170 (Mar. 10, 2003 note finding no weakness, although plaintiff stated that several days earlier his left arm had been weak), 173 (Jan. 17, 2003 note finding no weakness), 221 (Apr. 22, 2003 note denying weakness), 225 (June 30, 2003 note finding no deficits in upper-extremity muscle strength). In one of the most recent medical notes of record, the plaintiff was noted to be "actually doing pretty well for somebody with a disk herniation such as he has." *Id*. at 233 (May 8, 2003 note).

While reasonable people could disagree, the administrative law judge supportably could have concluded that "the symptoms, signs, and laboratory findings reported in the case record" did not "suggest that a judgment of equivalence may be reasonable." SSR 96-6p at 132. He accordingly had no duty to convene a supplemental hearing to take testimony from a medical expert on the matter.[3]

---

to serve the purpose described in SSR 96-6p.

[3] At oral argument, counsel for the plaintiff cited, for the first time, three authorities in support of his client's position on this point: *Diehl v. Barnhart*, 357 F. Supp.2d 804 (E.D. Pa. 2005), *Maniaci v. Apfel*, 27 F. Supp.2d 554 (E.D. Pa. 1998), and *Honeysucker v. Bowen*, 649 F. Supp. 1155 (N.D. Ill. 1986). As I emphasized to counsel at oral argument, Social Security plaintiffs must set forth the authorities on which they intend to rely in their statements of errors; otherwise, neither the court nor counsel for the commissioner can prepare adequately for oral argument. In any event, the three cases belatedly cited are neither controlling nor persuasive authority for the proposition that remand is required here. The *Diehl* and *Maniaci* decisions are problematic in that, in those cases, the court seemingly concluded based on its own *de novo* review that the plaintiff's evidence fairly raised a question of meeting and/or equaling a *(continued on next page)*

### B.  Challenge to Portions of RFC Finding

The plaintiff next decries the failure of the administrative law judge to find any limits in his capacity to push, pull or operate hand controls or his ability to manipulate objects.  *See* Statement of Errors at 2.  He posits that this conclusion is against the weight of the evidence, in particular the progress notes of his primary-care provider, J. Scott Patch, M.D., and an MRI of September 2002 revealing the existence of cervical degenerative disc disease, a herniated disc, nerve-root impingement and left-upper-extremity radiculopathy.  *See id.*; *see also* Record at 170-83 (notes of Dr. Patch covering period from Oct. 5, 2001 through Mar. 10, 2003), 176 (MRI report dated Sept.  16, 2002), 221-22 (note of Dr. Patch dated Apr. 22, 2003).  In so arguing, the plaintiff overlooks the fact that the Record contains two RFC assessments by non-examining Disability Determination Services ("DDS") consultants, both of whom had access to the September 2002 MRI report and most of Dr. Patch's notes.  *See* Record at 146-53 (RFC assessment dated Jan. 31, 2003 by Lawrence Johnson, M.D.), 154-61 (RFC assessment dated June 2, 2003 by Dr. Nielson).  Both Drs. Johnson and Nielson found the plaintiff unlimited in ability to push, pull and operate hand controls.  *See id.* at 147, 155.  Dr. Johnson found that the plaintiff had one manipulative limitation (inability to do overhead work bilaterally), *see id.* at 149, while Dr. Nielson found no manipulative limitations, *see id.* at 157.

---

Listing.  *See Diehl*, 357 F. Supp.2d at 817 ("While the evidence of record could be viewed as supporting the ALJ's determination that Plaintiff's impairments do not meet the criteria for Listing 12.04, the Court finds that there is equally probative evidence in the record supporting the opposite conclusion."); *Maniaci*, 27 F. Supp.2d at 558 ("The evidence of [the plaintiff's] orthopedic condition presented at the hearing does not support a determination that his condition matches Listing 1.05(C), but the Court concludes that it fairly raises the question of whether plaintiff's impairment is equivalent to Listing 1.05[C][.]") (citation and internal punctuation omitted).  In any event, the plaintiffs in *Diehl* and *Maniaci* presented a much closer case than does the plaintiff here.  In *Diehl*, the plaintiff presented evidence arguably demonstrating that he met Listings 12.04 and 12.05(C).  *See Diehl*, 357 F. Supp.2d at 817-20.  In *Maniaci*, although the administrative law judge had concluded that the plaintiff did not demonstrate "significant loss of motion in the spine" as required by Listing 1.05(C), *see Maniaci*, 27 F. Supp.2d at 556, the plaintiff had presented evidence, *inter alia*, that he had been found to have a fifty percent loss of range of motion in his lower back and a twenty-five percent loss of range of motion in his upper back, *see id.* at 558.  In *Honeysucker*, which predates adoption of SSR 96-6p, the plaintiff also made out a much more compelling case that her condition equaled a Listing than has the plaintiff here.  A woman of the plaintiff's height met a Listing for obesity if she weighed 242 pounds and had persistent hypertension.  *See Honeysucker*, 649 F. Supp. at 1157.  The plaintiff had persistent hypertension and weighed 239 pounds.  *See id.* at 1157-58.  The court concluded that, in the circumstances, the *(continued on next page)*

The First Circuit has made clear that, in appropriate circumstances, the opinion of a non-examining consultant can constitute "substantial evidence" in support of an administrative law judge's finding. *See, e.g., Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

Dr. Nielson's notes suggest a careful review of the available medical evidence. *See* Record at 155-56. From all that appears, only one progress note cited by the plaintiff was unavailable for Dr. Nielson's review – a progress note by Dr. Patch dated April 22, 2003. *See id*. at 221-22. This note was essentially cumulative of other notes available for Dr. Nielson's review. The plaintiff denied weakness or significant change in pain and continued to have numbness in his left forefinger. *See id.* at 221. One observation was new: The plaintiff was noted, on physical examination, to have a limited range of motion of his neck. *See id*. at 222. However, this was noted to be without popping, pain or hesitation. *See id*. Overall, the picture presented by the April 22, 2003 note is consistent with that presented in previous notes. The administrative law judge thus supportably relied on the Nielson RFC assessment as substantial evidence of the plaintiff's RFC.

The plaintiff argues, in addition, that the administrative law judge's RFC determination was inconsistent with his own findings of nerve-root impingement and radiculopathy. *See* Statement of Errors at 2. However, a diagnosis of radiculopathy does not, in itself, convey information regarding

---

administrative law judge could not supportably have determined that three pounds made a crucial difference (and the plaintiff thus did not "equal" the Listing) without expert medical advice on the question. *See id*. at 1159.

resultant levels of symptomatology.  *See, e.g.*, Stedman's Medical Dictionary 1503 (27th ed. 2000) (defining radiculopathy as "[d]isorder of the spinal nerve roots").

The bottom line: While reasonable people could disagree about the degree of impact of the plaintiff's neck impairment on his RFC, as indeed did Drs. Johnson and Nielson, substantial evidence supports the RFC findings the administrative law judge made.  There thus is no basis to disturb them.

### C.  Inconsistency Between Daily Activities and RFC

The plaintiff next complains that the administrative law judge erroneously determined that his RFC finding for the plaintiff was consistent with the plaintiff's activities of daily living.  *See* Statement of Errors at 2-3.  The administrative law judge found, *inter alia*, that the plaintiff could perform work activity within his RFC on a full-time basis.  *See* Finding 6, Record at 24.  He elaborated in his decision: "His activities of daily living are certainly consistent with the residual functional capacity I find him to possess.  Thus he sweeps, mops the floor and folds laundry.  With help from his son he can do cleaning, shopping, and cooking.  He pays bills, takes care of his own personal hygiene, uses a computer, watches television, checks his mail, and does other normal activities of daily living."  *Id.* at 23.

The plaintiff asserts: "Nowhere in testimony or in medical evidence is there support for the proposition that [his] daily activities approximate the requirements of full-time work on a regular and continuous basis as defined in SSR 96-8p."  Statement of Errors at 3.  Nonetheless, as counsel for the commissioner observed at oral argument, the administrative law judge did not rely solely on the plaintiff's activities of daily living but, rather, used them as a "building block," along with other evidence (such as the medical evidence discussed above), in crafting his ultimate RFC determination.  Thus, as counsel made clear at oral argument, the commissioner does not contend that the plaintiff was capable of full-time work because he could work at his computer for short intervals, take care of his

9

own personal hygiene, and sweep, mop and grocery-shop, but rather asserts that these activities suggest that the plaintiff's impairments were not as limiting as he claims (for example, that these undertakings were consistent with a seemingly unlimited ability to push, pull and manipulate objects), and that this in turn buttresses the ultimate RFC finding.

These are reasonable conclusions, which find support in the Record.  In a written report, the plaintiff indicated that he prepared three meals a day, went grocery shopping twice a month (for which he did not require assistance), paid bills by himself, watched television every day for five hours with no difficulty concentrating or understanding the programs, and read for an hour a day with no difficulty concentrating or remembering what he had read.  *See* Record at 129-30.  At hearing, he testified that he could only do such things as using his computer, sweeping, vacuuming, mopping and folding the laundry for ten or fifteen minutes at a time because of pain, and that his teenage son had taken over more activities from him.  *See id*. at 45-46.  However, in response to the question, "What do you do all day?" he testified: "Well, I watch a lot of TV.  You know, I putt around.  I check the mail and, you know – housekeeping keeps me pretty busy."  *Id*. at 47.  The administrative law judge reasonably could have concluded that these activities buttressed a finding, based on the evidence as a whole, that the plaintiff was capable of performing work activities on a regular and continuing basis, defined as "8 hours a day, for 5 days a week, or an equivalent work schedule."  Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004) ("SSR 96-8p"), at 144 (footnote omitted).

### D.  Side Effects of Medication

Citing Social Security Ruling 96-7p, the plaintiff finally contends that the administrative law judge erred in apparently rejecting his testimony that his medications caused sleepiness solely on the

basis of lack of objective medical evidence. *See* Statement of Errors at 3-4. Ruling 96-7p provides, in relevant part:

> [A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence. A report of negative findings from the application of medically acceptable clinical and laboratory diagnostic techniques is one of the many factors that appropriately are to be considered in the overall assessment of credibility. However, the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.

Social Security Ruling 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004) ("SSR 96-7p"), at 139. While the administrative law judge, in specifically discussing the claimed side effect of sleepiness, focused on lack of corroborating medical evidence, he considered other factors, such as the plaintiff's activities of daily living and his poor work history, in assessing his credibility overall. *See* Record at 23. I discern no reversible error in this approach. *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum,***

*within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 6th day of March, 2006.

<u>/s/ David M. Cohen</u>
David M. Cohen
United States Magistrate Judge
